## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUTE 92 MEDICAL, INC.,<br>a Delaware corporation<br><br>          Plaintiff,<br><br>     v.<br><br>BALT USA LLC,<br>a Delaware limited liability company<br><br>          Defendant. | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Route 92 Medical, Inc. ("Route 92 Medical") hereby complains of Defendant Balt USA, LLC ("Balt"), and alleges as follows:

### I. THE PARTIES

1.     Plaintiff Route 92 Medical is a Delaware corporation having its principal place of business at 155 Bovet Rd., Suite 100, San Mateo, California 94402.

2.     On information and belief, Defendant Balt is a Delaware limited liability company having its principal place of business at 29 Parker, Irvine, CA 92618.

### II. JURISDICTION AND VENUE

3.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, more particularly, 35 U.S.C. §§ 271 and 281.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

5.     This Court has personal jurisdiction over Defendant because Defendant is an entity organized and existing under the laws of the State of Delaware.

6.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendant is an entity organized and existing under the laws of the State of Delaware and therefore resides in the District of Delaware.

## III. <u>STATEMENT OF THE CASE</u>

7.      This action seeks relief for Defendant's infringement of Route 92 Medical's patents.

## IV. <u>STATEMENT OF FACTS</u>

8.      Route 92 Medical is a medical technology company specializing in neurovascular intervention.  Route 92 Medical's technologies improve clinical outcomes for patients, such as patients suffering from acute ischemic stroke.

9.      Acute ischemic stroke usually occurs when a cerebral artery in the brain is occluded, or blocked, restricting delivery of fresh oxygenated blood from the heart and lungs to the brain.  Such blockages are usually caused by a blood clot lodging in the cerebral artery.  If the blockage is not quickly resolved, the blockage may cause neurological damage or death. Therefore, immediate treatment is critical.

10.      The primary therapies for treating acute ischemic stroke and restoring blood flow to the brain include the administration of drugs, mechanical removal of the blockage, or often a combination of the two.  Mechanical removal of the blockage is often referred to as a thrombectomy.

11.      One form of mechanical removal involves a retrieval device, called a stent retriever. A physician advances a series of catheters through the patient's arteries to the site of the clot in the cerebral artery, where the retrieval device captures the clot.  The physician then removes the catheters from the patient, along with the retrieval device and clot.  Another form of mechanical

removal involves aspiration. A physician inserts a large bore aspiration catheter at an access site and maneuvers it through complex anatomy to the site of the clot. A physician then applies suction to remove the clot.

12.    These mechanical therapies—retrieval and aspiration—often require a series of guidewires, microcatheters, and intermediate catheters to guide the treatment device from an access site, through the complex anatomy, and to the site of the clot.

13.    Before Route 92 Medical's technology, existing systems and methods for treating acute stroke suffered from a severe problem: the amount of time required to restore blood flow to the brain. Restoration of blood flow through the administration of drugs often took hours, during which time brain tissue is deprived of adequate oxygen. And restoration of blood flow via mechanical removal was often not possible due to an inability to navigate the treatment devices through the challenging anatomy of the cerebral arteries. Due to these challenges, there was often a high risk of permanent injury to the brain tissue. Indeed, from 2015–2020, stroke was the fifth leading cause of death in the United States each year. National Center for Health Statistics, *Leading Causes of Death for 2015–2020*.

14.    In 2007, Dr. Tony Chou founded Silk Road Medical to prevent and treat stroke. Silk Road Medical achieved many major milestones in its research and development. For example, it developed and commercialized the Transcarotid Artery Revascularization (TCAR) technology, an endovascular procedure that uses neuroprotective blood flow reversal and stenting for long-term plaque stabilization and stroke prevention. While at Silk Road Medical, Dr. Chou also began work on other neurovascular systems for stroke treatment.

15.    In 2015, to continue that work on the neurovascular systems for stroke treatment while Silk Road Medical continued to focus on the TCAR type procedures and transcervical

approaches, Dr. Chou founded Route 92 Medical. Route 92 Medical's inventors further developed an innovative, streamlined stroke treatment system, thereby reducing the time required for treatment and increasing the consistency with which the patient's anatomy could be navigated and blood flow restored to the brain.

16.     Dr. Chou's efforts, along with others, have led to multiple patents, including U.S. Patent Nos. 11,229,770 ("the '9770 patent) (filed August 2, 2019), 11,793,972 ("the '972 patent") (filed January 19, 2021), 11,806,032 ("the '032 patent) (filed December 16, 2022), 11,925,770 ("the '5770 patent") (filed April 7, 2023), and 12,262,911 ("the '911 patent") (filed September 3, 2020) (collectively "the Asserted Patents"). Dr. Chou and Scott Wilson are inventors of the '032 patent. Dr. Chou, Michi Garrison, and Scott Wilson are inventors of the '972 patent. Dr. Chou, Scott Wilson, and Vera Shinsky are inventors of the '9770 patent and the '5770 patent. Dr. Chou and Michi Garrison are inventors of the '911 patent.

17.     Route 92 Medical's efforts have also led to multiple FDA-approved medical devices, including Route 92 Medical's FreeClimb® reperfusion systems with Tenzing® delivery catheters. *See* Route 92 Medical News, https://www.route92medical.com/news/. Physicians have used Route 92 Medical's FreeClimb® with Tenzing® to successfully treat blockages in under 10 minutes. *See* Route 92 Medical Clinical Evidence, https://www.route92medical.com/clinical-evidence/; *see also* Route 92 Medical Announces Impressive Clinical Results for its Tenzing® Technology, https://www.route92medical.com/route-92-medical-announces-impressive-clinical-results-for-its-tenzing-technology/.

18.     Clinical studies have confirmed the advance in treatment that the Tenzing® Technology provides. One study concluded that Route 92 Medical's Tenzing® delivery catheter is "a novel navigation support catheter" demonstrating "high rates of technical success." Daniel

Tonetti et al., *Novel Tenzing 7 Delivery Catheter for Thrombectomy in Acute Stroke: A Clinical Multicenter Experience*, STROKE: VASCULAR AND INTERVENTIONAL NEUROLOGY, Aug. 21, 2023, https://www.ahajournals.org/doi/10.1161/SVIN.123.000940.  Another study concluded that the Tenzing® Technology "demonstrated consistent (100%) access to the target LVO [large vessel occlusion] . . .without the use of a SR [stent retriever] for anchoring and without procedural complication."  Fabio Settecase et al., *Improved catheter delivery for aspiration thrombectomy using Tenzing 7 ledge reducing catheter and FreeClimb 70*, NEW DEVICES AND TECHNOLOGY, May 8, 2023, https://journals.sagepub.com/doi/epub/10.1177/15910199231177754.  That study went on to conclude that "the Tenzing 7 delivery catheter in AT [aspiration thrombectomy] significantly reduces the shelf, or ledge, between an inner delivery catheter and outer aspiration catheter and likely reduces tracking force necessary to advance an aspiration catheter."  *Id*.

19.    In May 2025, Route 92 Medical's HiPoint® 88 reperfusion system including the Tenzing® delivery catheter became the largest diameter catheter ever FDA-cleared for direct aspiration for the reestablishment of blood flow in the brain.  *See* Route 92 Medical News, https://www.route92medical.com/news/.  The HiPoint® 88 and HiPoint® 70 reperfusion systems utilize the Tenzing® delivery catheter to simplify delivery. To support FDA clearance for the first super-bore revascularization catheter for direct aspiration, Route 92 Medical conducted a 250-patient pivotal randomized trial called the SUMMIT MAX trial.  This trial is the only prospective randomized (1:1) controlled endovascular stroke thrombectomy trial of a super-bore catheter. The trial demonstrated that Route 92 Medical's HiPoint® reperfusion system with Tenzing® delivery catheter is statistically superior to the largest catheter previously approved for aspiration.

20.    The results of the SUMMIT MAX trial were published in Stroke, an American Heart Association journal. The author described some of the benefits of Route 92 Medical's

HiPoint® reperfusion system with Tenzing® delivery catheter: "[U]sing a larger aspiration catheter can be challenging to deliver as the catheter makes contact with arterial branching points (e.g. ophthalmic artery) preventing further navigation to the target artery of interest. The Tenzing catheter insert of the HiPoint Reperfusion system is an atraumatic tapered catheter that facilitates the delivery of its matching aspiration catheter by reducing this ledge effect."

21.    Route 92 Medical marks the HiPoint® and FreeClimb® reperfusion systems and Tenzing® delivery catheter with the Asserted Patents and lists the Asserted Patents on its website. *See* www.route92medical.com/patents.

22.    Balt is a medical technology company that focuses on neurovascular treatment. Balt sells the Carrier Delivery Catheter ("Carrier"), which is used to deliver distal access catheters in the neurovasculature.  *See* https://baltgroup.com/products/carrier/.  Balt also offers the Raptor Aspiration Catheter ("Raptor"), which is used to treat acute ischemic stroke.  *See* https://baltgroup.com/products/raptor/.  Balt teaches clinicians to use the Carrier to deliver the Raptor to the treatment site in the neurovasculature (the "Carrier-Raptor system").  *See* https://vimeo.com/994166899;            https://x.com/balt_usa/status/1886521308206256396; https://x.com/balt_usa/status/1880052465044770876; https://x.com/balt_usa/status/1877097792198480128.  The Instructions for Use for the Carrier ("Carrier IFU") are attached hereto as Exhibit 1.  The Instructions for Use for the Raptor ("Raptor IFU") are attached hereto as Exhibit 2.  Balt also teaches that the Carrier-Raptor system may be used with a guidewire.  *See* Ex. 1 at 3;  https://vimeo.com/994166899; https://x.com/balt_usa/status/1880052465044770876.  Balt offers the Hybrid Guidewire, which may be used to aid in the insertion of diagnostic or therapeutic catheters, such as the Carrier-Raptor

system, into the intracranial vasculature (the "Carrier-Raptor-Hybrid system"). *See* https://baltgroup.com/products/hybrid/.

## V. <u>THE PATENTS-IN-SUIT</u>

23.     Route 92 Medical is the owner by assignment of the '9770 patent, which is titled "Aspiration catheter systems and methods of use" and was lawfully and duly issued by the United States Patent and Trademark Office on January 25, 2022.  A true and correct copy of the '9770 patent is attached hereto as Exhibit 3.

24.     Route 92 Medical is the owner by assignment of the '972 patent, which is titled "Rapid aspiration thrombectomy system and method" and was lawfully and duly issued by the United States Patent and Trademark Office on October 24, 2023.  A true and correct copy of the '972 patent is attached hereto as Exhibit 4.

25.     Route 92 Medical is the owner by assignment of the '032 patent, which is titled "Aspiration catheter systems and methods of use" and was lawfully and duly issued by the United States Patent and Trademark Office on November 7, 2023.  A true and correct copy of the '032 patent is attached hereto as Exhibit 5.

26.     Route 92 Medical is the owner by assignment of the '5770 patent, which is titled "Aspiration catheter systems and methods of use" and was lawfully and duly issued by the United States Patent and Trademark Office on March 12, 2024.  A true and correct copy of the '5770 patent is attached hereto as Exhibit 6.

27.     Route 92 Medical is the owner by assignment of the '911 patent, which is titled "Methods and systems for treatment of acute ischemic stroke" and was lawfully and duly issued by the United States Patent and Trademark Office on April 1, 2025.  A true and correct copy of the '911 patent is attached hereto as Exhibit 7.

## VI. <u>FIRST CAUSE OF ACTION</u>

## <u>(INFRINGEMENT OF U.S. PATENT NO. 11,229,770)</u>

28.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27.

29.    Defendant's products, including at least the Carrier-Raptor system, infringe at least claim 1 of the '9770 patent under at least 35 U.S.C. § 271(a), (b), and (c).

30.    Defendant has directly infringed the '9770 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems that practice one or more claims of the '9770 patent.

31.    For example, the Carrier-Raptor system practices all of the limitations in claim 1 of the '9770 patent.  The Carrier-Raptor system is a coaxial catheter system:



*See* https://x.com/balt_usa/status/1880052465044770876 at 0:06.

32.     The Carrier-Raptor system comprises a catheter (Raptor) having a distal catheter portion having a lumen, and a distal end region, and a distal-most end having an opening from the lumen, the lumen having an inner diameter at the distal end region of at least about 0.052″; a proximal extension coupled to and extending proximally from the distal, catheter portion, the proximal extension being less flexible than the distal, catheter portion.



**Figure 1 – Raptor Aspiration Catheter**

*See* Exhibit 2 at 1, Figure 1. The Raptor is a "single-lumen, variable stiffness" catheter with an inner diameter of 0.071″ or 0.074″. Exhibit 2 at 1-2, Table 1. On information and belief, the proximal extension is less flexible than the distal, catheter portion of the Raptor.

      33. The Carrier-Raptor system comprises a catheter advancement element (Carrier) with a tubular portion having an inner diameter that is at least about 0.014″ up to about 0.024″, an outer diameter, wherein the outer diameter has at least one snug point, wherein a difference between the inner diameter of the distal, catheter portion and the outer diameter of the tubular portion at such snug point is no more than about 0.010″; a proximal extension coupled to and extending proximally from the tubular portion, the proximal extension being less flexible than the tubular portion; and a tubular, polymer tip portion located distal to the at least one snug point of the tubular portion, wherein the tip portion has a length and tapers along at least a portion of the length of the tip portion.



*See* Exhibit 1 at 1.  The Carrier is a "single lumen, variable stiffness composite catheter" that "facilitates advancement of the catheter" with an inner diameter of 0.021″.  Exhibit 1 at 1, Table 1.  The Carrier has a point where the maximum outer diameter is 0.059″, 0.062″, or 0.069″.  Exhibit 1 at 1.  The Raptor has an inner diameter of 0.071″ or 0.074″.  Exhibit 2 at 2, Table 1.  Therefore, for most sizes, the difference between the inner diameter of the Raptor and the outer diameter of the Carrier is no more than about 0.010″ at that snug point.  The Carrier has a "[t]apered tip" or "tapered distal segment" that is tubular.  *See* https://baltgroup.com/products/carrier/; Exhibit 1 at 1.  On information and belief, the tubular, tapered tip portion of the Carrier comprises a polymer.  Exhibit 1 at 1 ("variable stiffness, composite catheter").

34.    The Carrier-Raptor system has an advancement configuration characterized by the catheter advancement element (Carrier) positioned coaxially within the lumen of the distal catheter portion, wherein the at least one snug point of the tubular portion is substantially aligned with the distal end region of the distal catheter portion.



https://vimeo.com/994166899 at 0:47.

35.    In the advancement configuration of the Carrier-Raptor system, the tip portion has at least three points spaced along the length of the tip portion, the at least three points comprising a distal point located a distance proximal from a distal-most end of the catheter advancement element, the distal point having a first bending force that is no greater than about 0.05 Newtons; an intermediate point located a distance proximal from the distal point, the intermediate point having a second bending force; and a proximal point located a distance proximal from the intermediate point, the proximal point having a third bending force.    In its advancement configuration, the Carrier-Raptor system also has at least two system points along a length of the coaxial system, the at least two system points comprising a first system point located proximal to the distal-most end of the catheter portion, the first system point having a first system bending force, and a second system point located distal to the first system point by a distance that is at least about 1 mm distal to the distal-most end of the catheter portion, wherein the second system point can be the same or different from the proximal point, the second system point having a second system bending force.    The at least three points and the at least two system points are shown in the image below:



*See* https://vimeo.com/994166899 at 0:18.   The Carrier is a "variable stiffness, composite catheter." Exhibit 1 at 1. On information and belief, each of the at least three points has a bending force, and the distal point has a bending force of no greater than 0.5 Newtons. On information and belief, each of the at least two system points has a bending force.

36.     On information and belief, a difference between the second bending force and the first bending force of the Carrier-Raptor system divided by a distance between the distal point and the intermediate point equals a first flexibility slope.  On information and belief, a difference between the third bending force and the second bending force of the Carrier-Raptor system divided by a distance between the intermediate point and the proximal point equals a second flexibility slope. On information and belief, an average of the first flexibility slope and the second flexibility slope of the Carrier-Raptor system defines an average tip portion flexibility slope.

37.     On information and belief, a difference between the first system bending force and the second system bending force of the Carrier-Raptor system divided by a distance between the first system point and the second system point equals a third flexibility slope. On information and belief, a ratio of the third flexibility slope to the average tip portion flexibility slope of the Carrier-Raptor system is less than about 25.

38.     On information and belief, Defendant has knowledge of Route 92 Medical's patents, including the '9770 patent, at least based on Route 92 Medical's notoriety in the field, its

well-known products, including its HiPoint® and FreeClimb® reperfusion systems featuring Tenzing® delivery catheters, and marking its products with its patents, including the '9770 patent. *See* https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '9770 patent no later than the filing of this Complaint.

39.    Defendant has actively induced others to directly infringe the '9770 patent by marketing and selling the Carrier-Raptor system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '9770 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Carrier-Raptor system be used to infringe the '9770 patent.  Defendant's acts constitute infringement of the '9770 patent under 35 U.S.C. § 271(b).

40.    Defendant's acts constitute contributory infringement of the '9770 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Carrier-Raptor system that constitute material parts of the invention of the asserted claims of the '9770 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '9770 patent.

41.    As of no later than the filing of the Complaint, Defendant's infringement of the '9770 patent has been willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '9770 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

42.     Because of Defendant's infringement of the '9770 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

43.     Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## VII. <u>SECOND CAUSE OF ACTION</u>

## <u>(INFRINGEMENT OF U.S. PATENT NO. 11,793,972)</u>

44.     Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 43.

45.     Defendant's products, including at least the Carrier, infringe at least claim 1 of the '972 patent under at least 35 U.S.C. § 271(a) and (b).

46.     Defendant has directly infringed the '972 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems that practice one or more claims of the '972 patent.

47.     For example, the Carrier practices all of the limitations in claim 1 of the '972 patent. As shown in the Carrier IFU, the Carrier is an intravascular access catheter for advancing a medical device ("interventional devices") for intraluminal medical procedures within the neurovasculature.



Exhibit 1 at 1.

48.     The Carrier has a flexible elongate body having a proximal end, a distal-most end, and a single lumen extending therebetween.  The flexible elongate body of the Carrier comprises a plurality of regions, including a tapered region.  The distal-most end of the Carrier defines a distal opening from the single lumen.



Exhibit 1 at 1.  The Carrier is a "single lumen, variable stiffness, composite catheter," Exhibit 1 at 1, with a "[t]apered tip" or "tapered distal segment," *see* https://baltgroup.com/products/carrier/.

49.     The Carrier has a first marker that is visible under fluoroscopy disposed at a distal end of the tapered region, and a second marker that is visible under fluoroscopy disposed at a proximal-most end of the tapered region.



Exhibit 1 at 1. The carrier incorporates "[t]wo radiopaque markers at the distal end [to help] facilitate fluoroscopic visualization." Exhibit 1 at 1. The second marker is configured to identify a maximum outer diameter of the flexible elongate body. *See* Exhibit 1 at 1, Table 1. The Carrier is a "variable stiffness, composite catheter," Exhibit 1 at 1, and, on information and belief, the tapered region of the Carrier is made of an unreinforced polymer.

50.    The Carrier has a proximal extension extending proximally from the proximal end of the flexible elongate body to an extracorporeal proximal end.



Exhibit 1 at 1. The proximal extension of the Carrier has a lumen communicating with the single lumen of the flexible elongate body to form a single, contiguous lumen between the distal opening and a proximal opening at the extracorporeal proximal end.

51.     On information and belief, Defendant has knowledge of Route 92 Medical's patents, including the '972 patent, at least based on Route 92 Medical's notoriety in the field, its well-known products, including its HiPoint® and FreeClimb® reperfusion systems featuring Tenzing® delivery catheters, and marking its products with its patents, including the '972 patent. *See* https://www.route92medical.com/patents/. Moreover, Defendant had knowledge of the '972 patent no later than the filing of this Complaint.

52.     Defendant has actively induced others to directly infringe the '972 patent by marketing and selling the Carrier, knowing and intending that the Carrier would be used by physicians, customers, and end users in a manner that infringes the '972 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Carrier be used to infringe the '972 patent. Defendant's acts constitute infringement of the '972 patent under 35 U.S.C. § 271(b).

53.     As of no later than the filing of the Complaint, Defendant's infringement of the '972 patent has been willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '972 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

54.     Because of Defendant's infringement of the '972 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

55.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## VIII. THIRD CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 11,806,032)

56.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55.

57.    Defendant's products, including at least the Carrier-Raptor system, infringe at least claim 1 of the '032 patent under at least 35 U.S.C. § 271(a), (b), and (c).

58.    Defendant has directly infringed the '032 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems that practice one or more claims of the '032 patent.

59.    For example, the Carrier-Raptor system practices all of the limitations in claim 1 of the '032 patent.  As shown in the Carrier and Raptor IFUs, the Carrier-Raptor system is a system for performing a medical procedure at a treatment site within a cerebral vessel of a patient.



Exhibit 1 at 1.  The Carrier "is intended to assist the delivery of interventional devices in the peripheral and neurovasculature."  Exhibit 1 at 1.



**Raptor™ Aspiration Catheter**
**Instructions for Use (IFU)**

*Carefully read entire instructions prior to use.*

**INDICATIONS FOR USE**

The Raptor Aspiration Catheter with a compatible aspiration pump and Balt Aspiration Tubing Set is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset.

Patients who are ineligible for intravenous tissue plasminogen activator (IV-tPA) or who fail IV-tPA therapy are candidates for treatment.

Exhibit 2 at 1. The Raptor "is indicated for use in the revascularization of patients with acute ischemic stroke" and "facilitates removal of thrombus from the neurovasculature." Exhibit 2 at 1.

60. The Carrier-Raptor system has an outer catheter (Raptor) comprising a catheter lumen and a distal end.



**Figure 1 – Raptor Aspiration Catheter**

Exhibit 2 at 1, Figure 1. The Raptor is a "single-lumen, variable stiffness composite catheter." Ex. 2 at 1.

61. The Carrier-Raptor system has a catheter advancement device (Carrier) for advancing the outer catheter (Raptor) within the cerebral vessel. The Carrier has a flexible elongate body having a proximal end, a distal end, and a single lumen extending therebetween. The flexible elongate body comprises a proximal segment configured to move the Carrier axially within the catheter lumen of the outer catheter (Raptor); an intermediate segment comprising a

19

polymer having a first durometer; and a tip segment formed of a polymer different from the polymer of the intermediate segment, the polymer of the tip segment having a second durometer less than the first durometer.



Exhibit 1 at 1. The Carrier is "a single lumen, variable stiffness, composite catheter." Exhibit 1 at 1. On information and belief, the intermediate segment and the tip segment of the Carrier are formed from different polymers having different durometers, the polymer tip segment having a durometer less than the intermediate segment.

62.     The tip segment of the Carrier transitions distally from a first outer diameter of between 0.048″ and 0.080″ to a distal-most end of the catheter advancement device having a second outer diameter smaller than the first outer diameter, the second outer diameter being at a distal opening from the single lumen.



Exhibit 1 at 1. The first outer diameter, or maximum outer diameter, of the Carrier is 0.059″ or 0.062″ or 0.069″. Exhibit 1 at 1, Table 1. The second outer diameter is smaller than the first outer diameter because it is located at the distal opening at the end of the tapered tip as shown in the diagram above.

63.     The Carrier has a working length configured to extend from outside a patient's body, through a femoral artery, and to the cerebral vessel. The Carrier has a usable length of 152 cm. Exhibit 1 at 1, Table 1. On information and belief, this usable length is sufficient to extend from outside a patient's body, through a femoral artery, to the neurovasculature. The Carrier "is intended for general intravascular use, including the peripheral, coronary, and neuro vasculature." Exhibit 1 at 2. The single lumen of the Carrier extends along the entire working length to the distal opening and has a constant inner diameter of 0.021″, Exhibit 1 at 1, Table 1, which is within the range of about 0.010″ to about 0.024″.

64.     As shown in the image below, the outer diameter of the flexible elongate body of the Carrier is sized to be positioned within the lumen of the Raptor such that the tip segment is positioned distally beyond the distal end of the Raptor to aid in delivery of the Raptor to an intracranial vessel.



*See* https://vimeo.com/994166899 at 0:047.  The Carrier is designed to "facilitate[] advancement of the catheter and is intended to assist the delivery of interventional devices in the peripheral and neuro vasculature."  Exhibit 1 at 1.

65.    On information and belief, Defendant has knowledge of Route 92 Medical's patents, including the '032 patent, at least based on Route 92 Medical's notoriety in the field, its well-known products, including its HiPoint® and FreeClimb® reperfusion systems featuring Tenzing® delivery catheters, and marking its products with its patents, including the '032 patent. *See* https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '032 patent no later than the filing of this Complaint.  Moreover, Defendant had knowledge of the '032 patent no later than the filing of this Complaint.

66.    Defendant has actively induced others to directly infringe the '032 patent by marketing and selling the Carrier-Raptor system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '032 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Carrier-Raptor system

be used to infringe the '032 patent. Defendant's acts constitute infringement of the '032 patent under 35 U.S.C. § 271(b).

67.    Defendant's acts constitute contributory infringement of the '032 patent under 35 U.S.C. § 271(c). Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Carrier-Raptor system that constitute material parts of the invention of the asserted claims of the '032 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '032 patent.

68.    As of no later than the filing of the Complaint, Defendant's infringement of the '032 patent has been willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '032 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

69.    Because of Defendant's infringement of the '032 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

70.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

### IX. <u>FOURTH CAUSE OF ACTION</u>

### <u>(INFRINGEMENT OF U.S. PATENT NO. 11,925,770)</u>

71.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70.

72.     Defendant's products, including at least the Carrier-Raptor system, infringe at least claim 1 of the '5770 patent under at least 35 U.S.C. § 271(a), (b), and (c).

73.     Defendant has directly infringed the '5770 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems that practice one or more claims of the '5770 patent.

74.     For example, the Carrier-Raptor system practices all of the limitations in claim 1 of the '5770 patent. The Carrier-Raptor system is a catheter system comprising an aspiration catheter (Raptor) comprising a lumen and a distal end having an opening from the lumen.



**Figure 1 – Raptor Aspiration Catheter**

Exhibit 2 at 1, Figure 1. The Raptor is a "single-lumen, variable stiffness composite catheter." Exhibit 2 at 1.

75.     The Carrier-Raptor system comprises a catheter advancement element (Carrier) comprising a tubular portion having an inner diameter and an outer diameter; and a tapered tip portion located distal to the tubular portion.



Exhibit 1 at 1.  The tubular portion of the Carrier has an inner diameter of 0.021″ and an outer diameter of 0.059″ or 0.062″ or 0.069″.  Exhibit 1 at 1, Table 1.

76.     The Carrier has an alignment point located just proximal to the tapered tip portion. As can be seen from the image below, the Carrier-Raptor system has an assembled configuration characterized by the Carrier positioned within the lumen of the Raptor, wherein the alignment point of the Carrier is substantially aligned with the distal end of the catheter.



*See* https://vimeo.com/994166899 at 0:047.

77.     In the Carrier-Raptor system's assembled configuration, the tapered tip portion has at least three points spaced along a length of the tapered tip portion, the at least three points comprising: a distal point located 5 mm proximal from a distal-most end of the Carrier, the distal point having a first bending force; an intermediate point located 12 mm proximal from the distal-

most end of the Carrier, the intermediate point having a second bending force; and a proximal point located 13 mm proximal from the distal-most end of the Carrier, the proximal point having a third bending force.  In its assembled configuration, the Carrier-Raptor system also has at least two system points comprising: a first system point located 19 mm proximal to a distal-most end of the Carrier-Raptor system, the first system point having a first system bending force; and a second system point located 13 mm proximal to the distal-most end of the Carrier-Raptor system, wherein the second system point is the same or different from the proximal point, the second system point having a second system bending force.  On information and belief, each of the at least three points has a bending force.  On information and belief, each of the at least two system points has a bending force.

78.     On information and belief, a difference between the second bending force and the first bending force of the Carrier-Raptor system divided by a distance between the distal point and the intermediate point equals a first flexibility slope.  On information and belief, the difference between the third bending force and the second bending force of the Carrier-Raptor system divided by a distance between the intermediate point and the proximal point equals a second flexibility slope.

79.     On information and belief, an average of the first flexibility slope and the second flexibility slope of the Carrier-Raptor system defines an average tip portion flexibility slope.  On information and belief, a difference between the first system bending force and the second system bending force of the Carrier-Raptor system divided by a distance between the first system point and the second system point equals a third flexibility slope.  On information and belief, the Carrier-Raptor system has a ratio of the third flexibility slope to the average tip portion flexibility slope of less than 25.

80.     On information and belief, Defendant has knowledge of Route 92 Medical's patents, including the '5770 patent, at least based on Route 92 Medical's notoriety in the field, its well-known products, including its HiPoint® and FreeClimb® reperfusion systems featuring Tenzing® delivery catheters, and marking its products with its patents, including the '5770 patent. *See* https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '5770 patent no later than the filing of this Complaint.

81.     Defendant has actively induced others to directly infringe the '5770 patent by marketing and selling the Carrier-Raptor system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '5770 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Carrier-Raptor system be used to infringe the '5770 patent.  Defendant's acts constitute infringement of the '5770 patent under 35 U.S.C. § 271(b).

82.     Defendant's acts constitute contributory infringement of the '5770 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Carrier-Raptor system that constitute material parts of the invention of the asserted claims of the '5770 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '5770 patent.

83.     As of no later than the filing of the Complaint, Defendant's infringement of the '5770 patent has been willful, deliberate, and intentional by continuing its acts of infringement

after becoming aware of the '5770 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

84.    Because of Defendant's infringement of the '5770 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

85.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## X. FIFTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 12,262,911)

86.    Plaintiff Route 92 Medical hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 85.

87.    Defendant's products, including at least the Carrier-Raptor-Hybrid system, infringe at least claim 1 of the '911 patent under at least 35 U.S.C. § 271(a), (b), and (c).

88.    Defendant has directly infringed the '911 patent by making, using, selling, offering for sale, and/or importing into the United States products and systems that practice one or more claims of the '911 patent.

89.    For example, the Carrier-Raptor-Hybrid system practices all of the limitations in claim 1 of the '911 patent. The Carrier-Raptor-Hybrid system is a system of devices (the Carrier, Raptor, and Hybrid Guidewire) for performing a medical procedure at a treatment site in a cerebral vessel of a patient. As shown in the Carrier IFU, the Carrier "is intended to assist the delivery of interventional devices in the peripheral and neurovasculature":



IFU-086 Rev. E
(11/2023)

**Carrier™ Delivery Catheter**
**Instructions for Use**

Rx Only: Federal law (USA) restricts this device to sale by or on the order of a physician.

**INSTRUCTIONS FOR USE**
Carefully read all instructions prior to use. Observe all warnings and cautions noted throughout these Instructions for Use (IFU). Failure to do so may result in complications.
**DEVICE DESCRIPTION**
The Carrier Delivery Catheter is a single lumen, variable stiffness, composite catheter. The design facilitates the advancement of the catheter and is intended to assist the delivery of interventional devices in the peripheral and neurovasculature. The outer surface of the Carrier Delivery Catheter is coated with a hydrophilic coating to increase lubricity. The proximal end of the Carrier Delivery Catheter incorporates a luer fitting for the attachment of accessories. Two radiopaque markers at the distal end help to facilitate fluoroscopic visualization.
A Steam Shaping Mandrel and Peel-away Introducer Tube are included within the tray.
The Carrier Delivery Catheter is provided sterile, non-pyrogenic, and is intended for single use only.

Exhibit 1 at 1.   The Raptor IFU likewise states that the Raptor "is indicated for use in the revascularization of patients with acute ischemic stroke" and "facilitates removal of thrombus from the neurovasculature":



**Raptor™ Aspiration Catheter**
**Instructions for Use (IFU)**

*Carefully read entire instructions prior to use.*

**INDICATIONS FOR USE**

The Raptor Aspiration Catheter with a compatible aspiration pump and Balt Aspiration Tubing Set is indicated for use in the revascularization of patients with acute ischemic stroke secondary to intracranial large vessel occlusive disease (within the internal carotid, middle cerebral - M1 and M2 segments, basilar, and vertebral arteries) within 8 hours of symptom onset.

Patients who are ineligible for intravenous tissue plasminogen activator (IV-tPA) or who fail IV-tPA therapy are candidates for treatment.

Exhibit 2 at 1.   Moreover, the Hybrid Guidewire "is intended for general intravascular use, including the neuro and peripheral vasculature" and "facilitate[s] the selective placement of diagnostic or therapeutic catheters."  *See* https://baltgroup.com/products/hybrid/.

90.     The Carrier-Raptor-Hybrid system comprises a catheter (Raptor) having a catheter lumen having an inner diameter and a distal end.



**Figure 1 – Raptor Aspiration Catheter**

Exhibit 2 at 1, Figure 1.  The Raptor is a "single-lumen, variable stiffness" catheter with an inner diameter of 0.071″ or 0.074″.  Exhibit 2 at 1-2, Table 1.

91.     The Carrier-Raptor-Hybrid system comprises an inner member (Carrier) sized and shaped to slide within the catheter lumen:



https://vimeo.com/994166899 at 0:18.

92.     The inner member (Carrier) defines a single lumen and has a distal portion and a distal-most end, wherein the distal portion has a first outer diameter that decreases distally to a second outer diameter at the distal-most end that is smaller than the first outer diameter.  The Carrier is a "single lumen, variable stiffness, composite catheter," Exhibit 1 at 1, with a "[t]apered tip" or "tapered distal segment,"  *see* https://baltgroup.com/products/carrier/.



Exhibit 1 at 1.  The first outer diameter, or maximum outer diameter, of the Carrier is 0.059″ or 0.062″ or 0.069″.  Exhibit 1 at 1, Table 1.  The second outer diameter is smaller than the first outer diameter because it is located at the distal opening at the end of the tapered tip as shown in the diagram above.

93.    The first outer diameter of the inner member (Carrier) is sized so that, when the inner member is positioned in an advancement configuration relative to the catheter forming an assembled catheter system, the inner member extends through the catheter lumen and the distal portion is positioned distal to the distal end of the catheter to form a smooth transition from the second outer diameter to the inner diameter of the catheter lumen at the distal end of the catheter and minimizing a step at the distal end of the catheter.  As shown in the image below, the Carrier has an advancement configuration relative to the catheter (Raptor) forming an assembled catheter system, such that the Carrier extends through the lumen of the Raptor such that the distal portion of the Carrier is distal to the distal end of the Raptor.



https://vimeo.com/994166899 at 0:47.  In the advancement configuration, the first outer diameter of the Carrier is "optimized for ledge effect reduction" of the Raptor.  *See id.*; *see also* https://baltgroup.com/products/carrier/.

94.    The Carrier-Raptor-Hybrid system comprises a guidewire (Hybrid Guidewire) position within the single lumen of the inner member (Carrier) and extending out a distal opening of the distal portion of the inner member.  The Hybrid Guidewire is "intended to facilitate the insertion of catheters into intracranial vascular branches for diagnostic or therapeutic use" and "can be steered to facilitate the selective placement of diagnostic or therapeutic catheters." *See* https://baltgroup.com/products/hybrid/.  As shown in the Carrier IFU, the guidewire is inserted through the Carrier's lumen. *See* Ex. 1 at 3.  As shown in the image below, the guidewire extends out of a distal opening of the distal portion of the inner member:



https://vimeo.com/994166899 at 0:41.

95.    On information and belief, when the Carrier-Raptor-Hybrid system is positioned with the inner member (Carrier) in the advancement configuration and the guidewire (Hybrid Guidewire) extending out of the distal opening of the distal portion of the inner member, the distal portion of the inner member creates a smooth transition in flexibility between a flexibility of the guidewire to a flexibility of the distal end of the catheter (Raptor).

96.    The Carrier-Raptor-Hybrid system is sufficiently flexible that, when positioned in the advancement configuration, the catheter (Raptor) and inner member (Carrier) are configured to be advanced together over the guidewire (Hybrid Guidewire) distal to a petrous portion of an internal carotid artery.  The Carrier, Raptor, and Hybrid Guidewire are intended for intravascular use, including the neuro and peripheral vasculature, including the "internal carotid" artery.  *See* Ex. 2 at 1; *see also* Ex. 1 at 2; https://baltgroup.com/products/hybrid/.  Moreover, Balt advertises the system as an "[o]ptimized design for catheter delivery past tortuosity, bifurcations[,] and vessel take-offs[.]"  *See* https://vimeo.com/994166899 at 0:08.

97.     On information and belief, Defendant has knowledge of Route 92 Medical's patents, including the '911 patent, at least based on Route 92 Medical's notoriety in the field, its well-known products, including its HiPoint® and FreeClimb® reperfusion systems featuring Tenzing® delivery catheters, and marking its products with its patents, including the '911 patent. *See* https://www.route92medical.com/patents/.  Moreover, Defendant had knowledge of the '911 patent no later than the filing of this Complaint.

98.     Defendant has actively induced others to directly infringe the '911 patent by marketing and selling the Carrier-Raptor-Hybrid system, knowing and intending that such systems would be used by physicians, customers, and end users in a manner that infringes the '911 patent. Defendant provides instructions for use, teachings, guides, manuals, demonstrations, trainings, and/or other materials to physicians, customers, and end users such that the Carrier-Raptor-Hybrid system be used to infringe the '911 patent.  Defendant's acts constitute infringement of the '911 patent under 35 U.S.C. § 271(b).

99.     Defendant's acts constitute contributory infringement of the '911 patent under 35 U.S.C. § 271(c).  Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Carrier-Raptor-Hybrid system that constitute material parts of the invention of the asserted claims of the '911 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in infringement of the '911 patent.

100.    As of no later than the filing of the Complaint, Defendant's infringement of the '911 patent has been willful, deliberate, and intentional by continuing its acts of infringement after

becoming aware of the '911 patent and its infringement thereof, thus acting in reckless disregard of Route 92 Medical's patent rights.

101.    Because of Defendant's infringement of the '911 patent, Route 92 Medical has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

102.    Unless enjoined, Defendant and/or others acting on behalf of Defendant will continue their infringing acts, thereby causing additional irreparable injury to Route 92 Medical for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor against Defendant for the following relief:

A.    Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them have infringed each of the '9770, '972, '032, '5770, and '911 patents;

B.    Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '9770, '972, '032, '5770 , and '911 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C.    Pursuant to 35 U.S.C. § 284, an award compensating Plaintiff for Defendant's infringement of the '9770, '972, '032, '5770 , and '911 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D.    Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '9770, '972, '032, '5770 , and '911 patents in view of the willful and deliberate nature of the infringement;

E.    Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs;

F.    An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

G.    That Defendant be directed to file with this Court and to serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

H.    That Defendant be required to account to Plaintiff for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiff, by reason of Defendant's acts complained herein;

I.    An award of taxable costs; and

J.    That this Court award such other and further relief as this Court may deem just.


Respectfully submitted,

Dated:  August 6, 2025                          PHILLIPS, MCLAUGHLIN & HALL, P.A.


*Of Counsel*                                    */s/ John C. Phillips, Jr.*
                                                John C. Phillips, Jr. (#110)
Stephen C. Jensen (*Pro Hac Vice*              Megan C. Haney (#5016)
*Forthcoming*)                                  1200 N. Broom Street
Irfan A. Lateef (*Pro Hac Vice Forthcoming*)   Wilmington, DE 19806
Jared C. Bunker (*Pro Hac Vice Forthcoming*)   (302) 655-4220
Isabella C. Pestana (*Pro Hac Vice*           jcp@pmhdelaw.com
*Forthcoming*)                                  mch@pmhdelaw.com

36

**KNOBBE, MARTENS, OLSON & BEAR,**         *Attorneys for Plaintiff Route 92 Medical, Inc.*
**LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Tel: (949) 760-0404
Fax: (949) 760-9502
Steve.Jensen@knobbe.com
Irfan.Lateef@knobbe.com
Jared.Bunker@knobbe.com
Isabella.Pestana@knobbe.com

Melis Tirhi (*Pro Hac Vice Forthcoming*)
**KNOBBE, MARTENS, OLSON & BEAR,**
**LLP**
1925 Century Park East, Suite 400
Los Angeles, CA 90067
Tel: (310) 551-3450
Fax: (310) 551-3458
Melis.Tirhi@knobbe.com